Filed 7/1/15  P. v. Taylor CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PRESTON TAYLOR,<br><br>    Defendant and Appellant. | B255513<br><br>(Los Angeles County<br>Super. Ct. No. BA410508) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Carol H. Rehm, Jr., Judge.  Affirmed.

Sheila Tuller Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The Los Angeles County District Attorney charged appellant Preston Taylor with one felony count of the sale, transportation, or offer to sell a controlled substance in violation of Health and Safety Code section 11352, subdivision (a).[1]  The information also alleged that appellant suffered three prior drug-related convictions (§ 11370.2, subd. (a)), one prior strike conviction (Pen. Code, §§ 667, subds. (b)-(j), 1170.12, subd. (b)), and four prior prison terms (Pen. Code, § 667.5).  A jury convicted appellant of the charged crime.  The trial court found the prior conviction allegations to be true, and struck the prior strike conviction in the furtherance of justice.  Appellant was sentenced to state prison for seven years, calculated as the midterm of four years, plus a consecutive term of three years pursuant to section 11370.2, subdivision (a).  Appellant was awarded 706 days of presentence credit.

Appellant contends, and the People agree, that the trial court erroneously instructed the jury on the elements of his crime.  While we also agree there was instructional error, we conclude that it was harmless.  We find no error regarding appellant's motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).  The judgment is affirmed.

**FACTS**

On April 23, 2013, at approximately 8:50 p.m., Los Angeles Police Department Officer Gabriela Diaz was working undercover as a drug buyer at 6th Street and Gladys in Los Angeles.  This area was known to the police as a "high narcotics area."

Officer Diaz was walking on 6th Street when appellant approached her and said, "Hey."  Officer Diaz said, "Hey, what's up with you?"  Appellant responded, "Nothing much, just chillin'."  Officer Diaz then asked appellant, "Hey, you got a dub?"  She testified that a "dub" is street vernacular for $20 worth of narcotics.  Appellant replied, "[Y]eah, but we got to go this way."  Officer Diaz followed appellant, who crossed the street and then asked her for money.  Officer Diaz gave appellant a "prerecorded" $20

---

[1]     All further statutory references are to the Health and Safety Code unless otherwise indicated.

2

bill. She testified that the Secret Service provides prerecorded bills to the police to conduct undercover narcotics operations. Appellant took the $20 bill and walked away.

Officer Diaz followed appellant from a distance, but lost sight of him for 40 to 45 seconds as he walked on Gladys. When she saw him again, he was speaking briefly with a group of people and then he walked away. Fearing that appellant might take off with the money, Officer Diaz waved him down. He stopped and let her catch up to him. Appellant was standing next to a three-foot-high brick wall and told her, "I left it for you right there."

Officer Diaz looked at the wall and saw an off-white solid, that was later determined to be 0.16 grams of rock cocaine. She picked it up and told appellant, "thanks for hooking me up." She then signaled to other officers that a drug deal had occurred, and started to walk away from appellant. He followed her and asked, "aren't you going to break me off a piece?" She refused and again signaled the other officers, who arrested appellant.

A search of appellant yielded a glass pipe containing an off-white solid residue that was later determined to be rock cocaine. The prerecorded $20 bill was not recovered from appellant.

Officer Diaz, who was also testifying as a narcotics expert, opined that appellant was acting as a "hook." She explained that a hook acts as a middleman between the drug dealer and the drug buyer, since dealers do not like to sell to unfamiliar people. Because the hook gives the money to the dealer, it is common for police not to recover buy money when arresting a hook. A hook is often a drug addict himself, so hooks commonly request a piece of the purchased narcotics. A dealer might also give a hook a small amount of narcotics to keep him bringing more customers and to keep him from working for another dealer.

## DISCUSSION

### I. Jury Instruction

#### A. *Erroneous Instruction*

Appellant contends, and the People agree, that the trial court erred in instructing the jury with the elements of section 11352, under which appellant was convicted. The parties are correct.

Appellant was arrested on April 23, 2013.

On May 23, 2013, appellant was charged with violating section 11352 by the "sale/transportation/offer to sell" a controlled substance. (Capitalization omitted.)

Effective January 1, 2014, the Legislature amended section 11352 by adding that "For purposes of this section 'transports' means to transport for sale." (Capitalization omitted.) (Stats. 2013, ch. 504, § 1.)

Appellant's trial began on February 20, 2014.

As to section 11352, the trial court instructed the jury with CALCRIM No. 2300, as follows:

"The defendant is charged in count 1 with selling/furnishing/giving away/ transporting cocaine base, a controlled substance in violation of Health & Safety Code Section 11352[, subdivision] (a). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant sold/furnished/transported/gave away a controlled substance; [¶] 2. The defendant knew of its presence; [¶] 3. The defendant knew of the substance's nature or character as a controlled substance; [¶] 4. The controlled substance was cocaine base; [¶] AND [¶] 5. The controlled substance was in a usable amount, only to establish a transportation theory of Defendant's guilt.[] [¶] Selling for the purpose of this instruction means exchanging a controlled substance for money, services or anything of value[.] [¶] A person transports something if he or she carries or moves it from one location to another, even if the distance is short. A usable amount is a quantity that is enough to be used by someone as a controlled substance. Useless traces or debris are not usable amounts. On the other hand, a usable amount does not have to be enough, in either amount or strength, to affect the user. [¶] The People do

4

not need to prove that the defendant knew which specific controlled substance he sold/furnished/transported/gave away. [¶] A person does not have to actually hold or touch something to sell/furnish/transport or give it away.[] It is enough if the person has control over it or the right to control it, either personally or through another person."

The trial court's instruction did not include the recent amendment to section 11352, requiring the additional element that transportation be "for sale." (§ 11352, subds. (a) & (c).) "[A]bsent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal." (*People v. Babylon* (1985) 39 Cal.3d 719, 722; *In re Estrada* (1965) 63 Cal.2d 740, 745.) No savings clause was included in the amendments to section 11352. (Stats. 2013, ch. 504, § 1.) Therefore, the statute as amended at the time of appellant's trial provided that transportation was a crime only if the prosecution established beyond a reasonable doubt that the transportation was for sale. Because the jury instruction did not include the new "for sale" element, the trial court did not properly instruct the jury.

### B. Harmless Error

Appellant contends that he was prejudiced by the erroneous instruction. The People disagree and so do we.

Instructional error that improperly describes or omits an element of the offense is subject to review under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. This means that "we proceed to consider whether it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict." (*People v. Mil* (2012) 53 Cal.4th 400, 417 (*Mil*).) Turning to the decision in *Neder v. United States* (1999) 527 U.S. 1, *Mil* explained: "*Neder* instructs us to 'conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' [Citation.] On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was

5

uncontested and supported by overwhelming evidence.' [Citations.] Our task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' [Citations.]" (*Mil*, *supra*, at p. 417.)

Appellant argues that because the prosecutor relied on different theories of guilt (selling, furnishing, giving away, transporting), and because the trial court rejected his request that the jury be instructed that it had to unanimously decide on a theory, the jury could have convicted him even if some jurors found that his possession of the rock cocaine was merely for personal use. But here, a thorough examination of the record demonstrates that the omitted element of transportation for sale was harmless beyond a reasonable doubt because there was overwhelming evidence that appellant transported the cocaine for sale.

Officer Diaz testified that while she was working undercover as a drug buyer, she encountered appellant in an area known to police as a "high narcotics area." She asked appellant for a "dub." He told her to follow him, then took her money. She saw him briefly speak with a group of people before walking away. When she waved at appellant, he stopped and allowed her to catch up with him. Appellant then told her, "I left it for you right there." Officer Diaz picked up an off-white solid that turned out to be rock cocaine. She thanked appellant for "hooking" her up and walked away. Appellant followed her and asked her to break off a piece of the cocaine for him. Although no buy money was recovered on appellant when he was searched during his arrest, Officer Diaz testified, in her expert capacity, that the absence of such money was consistent with how hooks operate, because he would have given the money to the dealer. She also testified that appellant's request for a piece of the rock cocaine was consistent with being a hook, since hooks are often addicts themselves.

Appellant argues that the prosecutor "exploited" the missing element of "for sale" in her closing argument by describing transportation as the moving of narcotics "from point A to point B." But appellant ignores the other portions of the prosecutor's argument when she explained aiding and abetting. The prosecutor told the jury: "So the question is: Did the defendant intend on helping the drug dealer to sell drugs? And the

6

answer is yes. That is exactly what he intended to do. Officer Diaz asked him, do you know where I can get a dub? The defendant said, yes, but we got to go this way. Gets her money. He knew exactly where to go, went to a group of people and got the drugs. [¶] . . . The defendant's conduct by getting the money, by going to the drug dealers, by giving them the money and getting the drugs, and then giving it to the officer aided and abetted and helped in the entire drug transaction."

We are satisfied the evidence proves beyond a reasonable doubt that appellant transported the cocaine for purposes of making a sale. Thus, the omitted element from the jury instruction resulted in an error that was harmless beyond a reasonable doubt.

## II. No *Pitchess* Error

Prior to trial, appellant moved for discovery of the police personnel records of Officer Diaz regarding any complaints and allegations of constitutional violations, fabrication of reasonable suspicion or probable cause, false arrest, perjury, dishonesty, writing of false police reports, use of excessive or inappropriate force and "any other evidence of misconduct amounting to moral turpitude and violence." The trial court granted the motion, held an in camera hearing, and found no discoverable information.[2]

Appellant now asks this court to independently review the sealed reporter's transcript of the in camera hearing to determine whether any relevant police personnel records were withheld. The People have no objection. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229–1232 [defendant has a right to appellate review of the trial court's determination of whether all relevant police personnel records were disclosed in response to *Pitchess* motion].) "Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

---

[2]    We note that while the *Pitchess* motion requested the records of four officers, appellant agreed to limit his motion to records pertaining only to Officer Diaz.

We have reviewed the sealed transcript of the in camera hearing on appellant's *Pitchess* motion. We find no abuse of discretion by the trial court.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
ASHMANN-GERST

We concur:

_____, J.
CHAVEZ

_____, J.
HOFFSTADT